Filed 2/22/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.R. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E069276 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1600319) |
| v. | OPINION |
| E.K., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Judith C. Clark, Judge. Conditionally reversed with directions.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

E.K. appeals from an order terminating her parental rights to her three children. The sole issue she raises is lack of compliance with the Indian Child Welfare Act of 1978, or ICWA (25 U.S.C. § 1901, et seq.), and with Welfare and Institutions Code sections 224 et seq. We agree, and we will conditionally reverse the order and remand the matter for compliance with those statutes.

## BACKGROUND

Because we address only an ICWA claim, a brief synopsis of the factual and procedural history will suffice.

A petition pursuant to Welfare and Institutions Code section 300 was filed on May 23, 2016, as to the three minors, then age three years, two years, and 20 months, respectively. The children's father, R.R., died of a heroin overdose on April 24, 2016. The petition alleged that mother was unable to provide adequate care for the children and endangered them as a result of her abuse of controlled substances and her untreated mental health issues.

The petition was sustained on June 15, 2016, and reunification services were ordered. Mother had overdosed on heroin several times before the petition was filed. She overdosed again in August 2016. Ultimately, reunification services were terminated. The children were placed in a prospective adoptive home. Parental rights were terminated on October 2, 2017.

Mother filed a timely notice of appeal on October 5, 2017.

2

## LEGAL ANALYSIS

Mother informed the court that neither she nor the children had Indian ancestry, and at the jurisdiction and disposition hearing, the court found that ICWA does not apply. Later, in response to information that the children might have Cherokee heritage though their father, respondent Riverside County Department of Public Social Services (DPSS) gave notice of the proceedings to three Cherokee tribes and to the Bureau of Indian Affairs.[1]

At the six-month review hearing in December 2016, DPSS informed the court that it had received responses from two of the tribes, stating that based on the information provided, the minors were not Indian children. DPSS stated that it was still waiting for a response from the third tribe. Mother made no objection to the sufficiency of the notices, and the court found that the notices were proper. A response was later received from the third tribe, also stating that the children were not Indian children.

At the review hearing in February 2017, mother apparently made no objection to the notices or noticing procedures, and the court found that ICWA does not apply.[2]

---

[1] The record does not reflect the source of the information. However, paternal relatives were involved in the proceedings, including the paternal grandmother and a paternal aunt, with whom the children resided for a number of months before being placed with prospective adoptive parents. Presumably, the information concerning the children's possible Cherokee heritage came from paternal relatives.

[2] The portion of the reporter's transcript dated June 1, 2017, appears in fact to be the proceedings from February 1, 2017, in that the proceedings reported on that date mirror the minute order from that date, including the order setting the next hearing on May 31, 2017.

Mother now contends that DPSS did not properly investigate the children's possible Cherokee heritage and that it omitted mandatory information from the ICWA notices sent to the tribes. She contends that the court had a continuing duty through the Welfare and Institutions Code section 366.26 hearing to make ICWA inquiries and that an implied finding was therefore made at that hearing that ICWA does not apply. She contends that the sufficiency of the investigation is therefore cognizable on appeal from the order terminating parental rights.

*The Issue Is Cognizable in This Appeal.*

Mother is correct that the juvenile court has a continuing duty to conduct an inquiry when it has received information that a dependent child might be an Indian child, as defined by ICWA, and to provide notice to any relevant tribe. This duty arises both under ICWA itself and under California's parallel statutes, Welfare and Institutions Code sections 224 et seq. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5 (*Isaiah W.*).)[3] The purpose of both statutory schemes is to "enable[] a tribe to determine whether the child [who is the subject of involuntary proceedings in a state court] is an Indian child and, if so whether to intervene in or exercise jurisdiction over the proceeding." (*Id*. at p. 5.) The juvenile court's duty to inquire when it has reason to know that an Indian child is involved in such a proceeding and to provide sufficient notice to any relevant tribe is independent of any obligation on the part of the parents of the dependent child: The court and the agency

---

[3] The California statutes were enacted in 2006 to "affirm ICWA's purposes ([Welf. & Inst. Code,] § 224, subd. (a)) and mandate compliance with ICWA '[i]n all Indian child custody proceedings' ([Welf. & Inst. Code,] § 224, subd. (b).)" (*Isaiah W.*, *supra*, 1 Cal.5th at p. 9.)

4

must act upon information received from any source, not just the parent (Welf. & Inst. Code, §§ 224.2, subd. (a), 224.3, subd. (b)(1)), and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal from an order entered at any hearing in which the juvenile court determined that ICWA was satisfied or does not apply (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 738-739; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267-1268). And, because the juvenile court's duty to comply with ICWA's notice requirements is ongoing until it is determined by the relevant tribe, following adequate notice, that the child is not an Indian child (*Isaiah W.*, at pp. 6, 11), the parent's failure to appeal from an earlier order does not preclude the parent from raising the issue of ICWA compliance in an appeal from a later order, including an order terminating parental rights. (*Isaiah W.*, at pp. 6, 14-15.) Accordingly, even though mother did not object at any point below to the sufficiency of the inquiry or of the notice given, the issue is cognizable in this appeal.

*Limited Remand for ICWA Compliance Is Necessary.*

Mother's contention as to the adequacy of the investigation and of the resulting notices to the Cherokee tribes is also well taken.

Welfare and Institutions Code section 224.3, subdivision (c), provides that if the court or social worker knows or has reason to know that an Indian child is involved in dependency proceedings, the social worker must make further inquiry, as soon as practicable, by interviewing the parents, Indian custodian and extended family members to gather the information required, under Welfare and Institutions Code section 224.2, to

5

be provided to the relevant tribes. As pertinent here, that information includes "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (Welf. & Inst. Code, § 224.2, subd. (a)(5)(C).) The social services agency must make a meaningful effort to contact specified family members who might have pertinent information. (*In re Michael V.* (2016) 3 Cal.App.5th 225, 235-236.)

Here, the notices sent to the three Cherokee tribes included the name of the children's father, R.R., his dates of birth and death, and his birthplace, as well as the names of the tribes he might have been affiliated with. The notices identified R.R.'s father, Alfred John R., as possibly affiliated with the same tribes, and gave his last known address, birth date and birthplace. The notices further identified R.R.'s paternal grandfather, John "Unknown" R., as possibly affiliated with the same tribes, but listed all other information about him as "unknown" or "no information available." (In each instance, the "R." stands for the same surname.)

Mother contends that this information demonstrates that DPSS did not comply with its duty to interview extended family members to gather pertinent information. She points out that both the paternal grandmother and the paternal aunt were readily available and might have been able to provide additional information. She also points out that DPSS had a last known address for the paternal grandfather, Alfred, and asserts that if DPSS had contacted him, Alfred "certainly" "could have supplied some of the

6

biographical information for his father John [i.e., the paternal great-grandfather], the other relative with purported Cherokee heritage." She asserts that DPSS "clearly" performed no such investigation because the paternal great-grandfather's biographical information is essentially blank, including whether he was living or deceased.

Mother is correct that it is likely that the paternal grandfather would have had some information about his father's Indian heritage, and that he could possibly have put DPSS in touch with his father, i.e., the children's paternal great-grandfather, or provided information as to the date and place of his father's birth, as well as further biographical information concerning himself. Yet, there is no information in the record that DPSS wrote to the paternal grandfather at his last known address to seek that information or that it made any other effort to contact him. Nor is there any evidence that DPSS attempted to contact the children's paternal great-grandmother. The notices identified both of the father's grandmothers, one living and one deceased. As to the living paternal great-grandmother, the notices gave her last known address and birth date, but no further information. Because neither paternal great-grandmother shared the "R." family surname, it is not possible to determine whether the living great-grandmother might have been a source of further information about the children's paternal grandfather or great-grandfather. However, there is no information in the record that DPSS attempted to contact the living great-grandmother in order to determine whether she had any relevant information. These are actions DPSS was required to undertake. (*In re Michael V.*, *supra*, 3 Cal.App.5th at pp. 235-236.)

7

DPSS contends that because the record is silent as to its investigative efforts, mother's contention that it should have done more is unsupported by the record and her contention that the paternal grandmother, paternal aunt and paternal great-grandfather most likely could have provided additional information is mere speculation. It contends that there is no requirement for the social services agency to document its efforts to contact relatives, and that the absence of information on the subject precludes mother from meeting her burden on appeal, i.e., to demonstrate error based on the record. DPSS relies on *In re Gerardo A.* (2004) 119 Cal.App.4th 988 and *In re Charlotte V.* (2016) 6 Cal.App.5th 51.

DPSS is correct that, in general, an appellant has the burden of producing an adequate record that demonstrates reversible error. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.) However, ICWA compliance presents a unique situation, in that, as we have just discussed, although the parent has no burden to object to deficiencies in ICWA compliance in the juvenile court, the parent may nevertheless raise the issue on appeal. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 6, 9, 14-15.) The purpose of ICWA and the California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child and whether it wishes to intervene in the proceedings. (*Isaiah W.*, at pp. 8-9, 15.) The parent is in effect acting as a surrogate for the tribe in raising compliance issues on appeal. Appellate review of procedures and rulings that are preserved for review irrespective of any action or inaction on the part of the parent should not be derailed simply because the parent is unable to produce an adequate record.

8

DPSS is correct that there is no express directive to the social services agency to provide a record of the efforts it undertook to comply with ICWA, either in the applicable statutes or rules of court or, as far as we are aware, in the case law. However, a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status. (*In re Michael V.*, *supra*, 3 Cal.App.5th at pp. 235-236.) The agency cannot omit from its reports any discussion of its efforts to locate and interview family members who might have pertinent information and then claim that the sufficiency of its efforts cannot be challenged on appeal because the record is silent.

Nor can the juvenile court assume that because *some* information was obtained and relayed to the relevant tribes, the social services agency necessarily complied fully with its obligations. On the contrary, once there is sufficient information to believe that the children might be Indian children within the meaning of ICWA and the California statutes, "responsibility for compliance" with those statutes "falls squarely and affirmatively" on *both* the social services agency and the court. (*Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406, 1410.) Accordingly, the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so. Here, the court did not inquire as to what efforts DPSS had made to contact the paternal grandfather or the paternal great-grandparents, and accordingly failed in its duty to ensure compliance with ICWA.

9

For these reasons, we will remand the matter for the limited purpose of compliance with the directives of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3.

## DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry and notice provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3, consistent with this opinion. If, after receiving notice as required by those statutes, the relevant tribes do not respond or respond that the children are not Indian children within the meaning of ICWA, the order terminating parental rights shall immediately be reinstated and further proceedings shall be conducted, as appropriate. If any tribe determines that the children are Indian children, the juvenile court shall proceed accordingly.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:


MILLER
J.


SLOUGH
J.

10