Filed 5/31/22  In re D.F. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOUTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re D.F., A Person Coming Under the Juvenile Court Law. | |
| | D079860 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520615) |
| v. | |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Conditionally reversed and remanded with directions.

Annie Greeleaf, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

J.G. (Father) appeals from an order pertaining to his daughter, D.F., finding without prejudice that the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) did not apply. Counsel for Father and the San Diego County Health and Human Services Agency (Agency) have conferred and agree that the Agency's investigation under the ICWA was inadequate. The parties filed a joint stipulation seeking the issuance of an immediate remittitur. As we shall explain, both the juvenile court and the Agency erred in performing their respective duties under the ICWA. Accordingly, we accept the stipulation, conditionally reverse, and remand for the limited purpose of ensuring compliance with ICWA's requirements.

FACTUAL AND PROCEDURAL BACKGROUND[1]

When asked by a social worker, Father and J.F. (Mother) denied any Native American or Alaskan Native heritage. At the detention hearing in December 2020, where Mother and Father appeared by telephone, Father's counsel represented that Father might have Apache or Kumeyaay ancestry. Mother's counsel made no representation regarding possible Indian ancestry for Mother and the juvenile court never asked Mother about any Indian ancestry. At a hearing in January 2021, Father stated that his "grandmother" was an Apache tribe member and that she had been "buried . . . with certificates and everything." Father did not specify whether this was his maternal or paternal grandmother. The social worker later asked Father for relative information but he refused to provide contact information for his paternal grandmother, his adult daughter, or his cousins.

---

[1] Because Father's challenge on appeal is limited to ICWA compliance, we limit our recitation of the facts and procedural history to those necessary to determine that issue.

2

This new information suggested that Father claimed Indian heritage through his deceased maternal grandmother.

During a pretrial settlement conference in April 2021, the Agency noted that application of the ICWA remained unresolved because Father was not cooperating by providing information. The juvenile court spoke to Father who represented that his elderly father would be the only person who had information but he had no contact information for his father. The juvenile court requested that Father search for information to provide to the Agency. Although Mother appeared at this hearing by telephone, the juvenile court never asked her about any possible Indian ancestry. The juvenile court found without prejudice that the ICWA did not apply. At a later hearing in July 2021, Father's counsel represented that Father might also have Yaqui Indian heritage.

DISCUSSION

A. *Legal Principles*

An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see Welf. & Inst. Code,[2] § 224.1, subd. (a) [adopting federal definition of " 'Indian child' "].) In dependency proceedings, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

At the first appearance by a parent in any dependency case, the juvenile court must "[a]sk each participant present whether the participant knows or has reason to know the child is an Indian child" and "[o]rder the parent, . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court,[3] rule 5.481(a)(2)(A), (C); see also § 224.2, subd. (c).) The Agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[4]

"There is *reason to believe* a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or

---

[3]    Further rule references are to the California Rules of Court.

[4]    ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of the ICWA].)

more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1), italics added.)[5]

If the juvenile court or social worker has reason to believe that an Indian child is involved the social worker must, as soon as practicable, conduct further inquiry, including, but not limited to: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting the tribes or any persons that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. (§ 224.2, subd.

---

[5] Thus, the less stringent "reason to believe" standard requiring further inquiry is based upon the six "reason to know" statutory circumstances. The six enumerated statutory circumstances are: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

(e)(1)-(2).) Only if this inquiry establishes reason to know[6] the child is an Indian child, must the Agency provide notice to the tribes by registered mail of the pending proceedings and their right to intervene. (*Id*. at subd. (f); § 224.3.)

B. *Analysis*

Father contends that the juvenile court and the Agency had a reason to know D.F. was an Indian child; thus, the Agency was required to perform further inquiry under subdivision (e)(2) of section 224.2 and effectuate notice to the tribes under section 224.2, subdivision (f) and section 224.3. The Agency states that after Father filed his opening brief, it sent inquiry letters to the requisite tribes and entities and requested an extension of time to file its respondent's brief to allow time to receive the respective responses. We granted the request and extended the filing deadline for the Agency's respondent's brief.

---

[6] "In 2006, California adopted various procedural and substantive provisions of [the] ICWA. [Citation.] In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 [citation], and govern here." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048, fn. omitted.) Before January 1, 2019, a "reason to know" could be based on "*information suggesting the child is a member of a tribe or eligible for membership in a tribe* or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (Former § 224.3, subd. (b)(1), italics added; Stats. 2006, ch. 838, § 32.)

Thereafter, the Agency represents that Father provided additional ICWA-related information, including the name and contact information of a relative who may have more information about his possible Indian heritage. The Agency claims that it needs to conduct inquiry with this relative and provide the tribes and agencies with the results of this new information under its continuing affirmative duty of inquiry under section 224.2, subdivision (a). The Agency submits that Father's statements suggest a reason to believe that D.F. is an Indian child per section 224.2, subdivision (e), that further inquiry is required but formal notice to the tribes is not.

We reject Father's argument that his statements to social workers, the juvenile court, or his counsel regarding his possible Indian ancestry provided a reason to know that D.F. was an Indian child. At most, Father's statements suggested the possibility that D.F. may have Indian ancestry. Indian ancestry, however, is not among the six enumerated statutory criteria for determining whether there is a reason to know a child is an Indian child. (§ 224.2, subd. (d)(1)-(6).) Thus, Father failed to show that the court erred in failing to ensure that notice of the proceedings was provided in accordance with the ICWA (*id.* at subd. (f); § 224.3) to the three tribes mentioned by Father.

The question becomes whether Father's unsupported claim of Indian ancestry gave the juvenile court and the Agency reason to believe that an Indian child was involved, thus triggering a duty of further inquiry under subdivision (e) of section 224.2. A split of authority exists on this issue. In *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*), the mother said she "may" have Cherokee ancestry. (*Id.* at p. 886.) Division One of the Second District found the statement suggests only a mere possibility of Indian ancestry and does not call for further inquiry because it does not establish a reason to

7

believe either that the child is a member of a tribe or that the child is eligible for membership. (*Id.* at p. 885.) In *In re T.G.* (2020) 58 Cal.App.5th 275, Division Seven of the Second District disagreed with the conclusion in *Austin J.* that a mere possibility of Indian ancestry was insufficient to trigger the duty of further inquiry. (*In re T.G.*, at p. 294.) The *In re T.G.* court concluded the phrase "reason to believe" must be interpreted broadly such that a parent's affirmative statement of Indian ancestry alone constitutes a reason to believe an Indian child may be involved and triggers the duty of further inquiry. (*Id.* at pp. 294–297.)[7]

We need not weigh in on the conflict between *Austin J.* and *In re T.G.* because the record here shows that the Agency was still in the initial inquiry stage of its investigation based on Father's reticence in providing *any* information to the Agency about his family.

---

[7] Other Courts of Appeal have rejected the conclusion in *Austin J.*, *supra*, 47 Cal.App.5th 870. (*In re A.M.* (2020) 47 Cal.App.5th 303, 322–323 [mother told she may have ancestry in specified tribes and her grandfather also had possible Indian heritage]; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 563 [further inquiry required where mother may have Indian ancestry from an unknown tribe in New Mexico]; *In re S.R.* (2021) 64 Cal.App.5th 303, 310, 316–317 [further inquiry required when parents deny but grandparents later claim Indian ancestry]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404–405 [further inquiry required when paternal grandmother disclosed and later denied Cherokee ancestry]; *In re I.F.* (2022) 77 Cal.App.5th 152, 164 ["mother's statements that she had been told by her paternal grandmother that she had Native American ancestry through her paternal grandfather, coupled with the maternal grandfather's statements that his father told him the family had Native American ancestry in Minnesota, established a reason to believe I.F. and B.F. are Indian children and thus triggered the duty of further inquiry under California law."].)

Throughout these proceedings Father has been uncooperative in providing information to the Agency, including refusing to provide the names and contact information for his paternal grandmother, his adult daughter, and his cousins. There is nothing in the record showing that Father disclosed the name of his deceased maternal grandmother to the Agency through which he claimed Indian heritage. It was not until *after* this appeal was filed that Father provided additional ICWA-related information, including the name and contact information for a relative who may have more information about his possible Indian heritage. Under these circumstances, we agree with the Agency that, based on its continuing affirmative duty of inquiry under section 224.2, subdivision (a), it was required to conduct inquiry with this relative and that a remand is necessary for this purpose. Based on the current record (no relative names, no birthdates, no addresses), even if the Agency informally contacted the tribes named by Father, the Bureau of Indian Affairs, and the State Department of Social Services, it had no information to provide other than Father's name.

While the Agency "has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status" (*In re K.R.* (2018) 20 Cal.App.5th 701, 709), it and the juvenile court are not obligated " 'to cast about' " for investigative leads. (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 323.) The Agency and the juvenile court satisfy their duty of inquiry if the parent does not provide information requiring follow-up, or if individuals with additional information refuse to talk to the Agency or are deceased. (*Ibid.*)

Additionally, the fact that Mother denied any Indian heritage at the beginning of the proceeding does not relieve the Agency of its "broad duty" to inquire of readily ascertainable extended family members whether D.F. is an Indian child. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) A contrary rule would "ignore[] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*; *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . , even though the children's great-grandmother was a member"].) Here, the Agency had contact with the maternal grandmother, a maternal cousin, and a maternal great-aunt but apparently never asked these individuals about any possible Indian heritage.

Where, as here, there is an inadequate initial inquiry, under the ICWA and related California law, "the error is in most circumstances . . . prejudicial and reversible." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 ["Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error. . . ."].)[8]

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following: [¶] (A) There is no

---

[8]     We also note that ICWA-020 forms are not in the record and it appears that the juvenile court never ordered Mother (or Father) to complete the form. (Rule 5.481(a)(2)(C).) Additionally, review of the reporter's transcripts shows that although Mother appeared by telephone at several hearings, the juvenile court never asked her about any possible Indian ancestry. (§ 224.2, subd. (c); see also rule 5.481(a)(2)(A) & (B).) Finally, before the juvenile court can find that the ICWA does not apply it must make a finding that "due diligence as required in this section have been conducted." (§ 224.2, subd. (i)(2).) The record does not show that the juvenile court made this finding.

reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).)

The present case involves reversible error because the parties agree, and we concur, that the Agency failed to comply with the ICWA and related California provisions. Because this case would be subject to reversal to permit compliance with the ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

DISPOSITION

The orders issued at the January 7, 2022, contested Welfare and Institutions Code section 366.21 hearing are conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file a report demonstrating its compliance with the inquiry provisions of the ICWA as outlined in this opinion. Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that D.F. is an Indian child, the orders issued at the January 7, 2022 hearing shall be reinstated. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe or to know that D.F. is an

11

Indian child, the court shall proceed accordingly.  The remittitur shall issue immediately.  (Rule 8.272(c)(1).)

IRION, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

12