Filed 9/21/22  In re A.H. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | B316347 (Los Angeles County Super. Ct. No. 20CCJP03836) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALEX H., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey M. Blount, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Alex H. (father) appeals from an order terminating his parental rights to A.H. (born July 2020).  Father's sole contention is that the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.)

We affirm the juvenile court's order.

## BACKGROUND

**Detention and petition**

K.N. (mother) gave birth to A.H. in July 2020.[1]  Father was not present at the time of A.H.'s birth and declined to report to the hospital to sign A.H.'s birth certificate.  Following discharge from the hospital, the maternal grandmother (MGM) took mother to a mental health evaluation, which resulted in mother being placed on a Welfare and Institutions Code section 5150 hold due to her odd behavior.[2]  Mother was diagnosed, prescribed medication, and later released.

---

[1]     Mother died during the pendency of this dependency case and therefore is not a party to this appeal.

[2]     All further statutory references are to the Welfare and Institutions Code.

2

On July 16, 2020, MGM received a call claiming mother was seen at a park placing A.H. in a diaper bag. MGM went to the park and brought A.H. and mother back to her home. Over the next several hours, mother made several attempts to leave MGM's home with A.H. Due to mother showing signs of mental instability, MGM contacted the Los Angeles Police Department (LAPD), who then contacted DCFS and the Department of Mental Health.

Responding social workers attempted to interview mother, who was uncooperative, difficult to engage, and refused to provide father's date of birth or contact information. Mother refused to answer questions regarding any possible American Indian heritage. Mother also refused to sign any forms, including forms pertinent to ICWA. After being assessed by a doctor, mother's condition was determined to present a child safety concern. A.H. was detained from mother and placed with great-aunt, Johanna R. Mother had no further contact with A.H.

On July 20, 2020, DCFS filed a petition on behalf of A.H. pursuant to section 300, subdivision (b).

Mother's older child (six years old) had been placed with a maternal aunt, Martha R., at the age of five months. The maternal aunt was the child's legal guardian.

Father was located and interviewed at the home of paternal grandfather Raymond H. Father said that he and mother ended their relationship, that he did not know A.H. was born, and that mother would not let him see A.H. Father knew that mother had mental health issues. Mother was twice hospitalized for mental health issues during their relationship. Father admitted to using marijuana, but denied domestic violence, medical or mental

health issues, sexual abuse or criminal history.  Father denied any Indian ancestry.

A social worker reported that father had a criminal history involving controlled substances.  There were allegations reported by maternal relatives that father was currently using drugs.  The social worker recommended that A.H. remain suitably placed.

At the July 23, 2020 detention hearing, father advised the juvenile court that he had no American Indian heritage.  Mother said she might have Cherokee tribal heritage.  The juvenile court ordered DCFS to send appropriate notices in accordance with ICWA.  The court detained A.H. from both parents.

**Jurisdiction**

DCFS prepared a jurisdiction/disposition report, which was filed on September 9, 2020.  The dependency investigator had interviewed MGM regarding American Indian ancestry.  MGM denied any knowledge of Cherokee Indian heritage.  The dependency investigator reported that notices were sent to the Cherokee tribes, the Bureau of Indian Affairs, and the Secretary of Interior.

Mother and father failed to make themselves available for interviews.  Father also failed to report for his on-demand drug test.

On October 2, 2020, the juvenile court sustained the section 300 petition.

**Disposition**

On November 30, 2020, the dependency investigator filed a last minute information for the court advising that mother had been killed while trying to walk across a freeway.

It was also reported that father had only one visit with A.H. and had not arranged to make any further visits.

4

The disposition hearing was continued to address issues including the receipt of paternity tests and an update regarding ICWA.

On January 14, 2020, a report was prepared for the juvenile court advising that the Cherokee tribes responded that A.H. was not enrolled, or eligible for enrollment, as a member of the Cherokee tribes. Father had a single visit with A.H. and failed to contact DCFS for more. Paternity test results were not yet available.

On March 16, 2021, DCFS provided a last minute information for the court indicating that father's probability of paternity of A.H. is 99.99 percent. DCFS recommended that the juvenile court declare father to be A.H.'s biological father only, as father had only a single visit with A.H. and failed to request additional visits. A.H. was thriving in his placement. It was recommended that the juvenile court schedule a permanency planning hearing pursuant to section 366.26.

At the March 16, 2020 disposition hearing, the court declared father to be A.H.'s biological father. A.H. was declared a dependent of the court and removed from father's custody. The juvenile court ordered no reunification services for father and scheduled a section 366.26 permanency planning hearing.

**Subsequent reports**

In its section 366.26 permanency planning report filed on July 1, 2021, DCFS noted that the juvenile court had not made findings pursuant to ICWA, despite a report that MGM denied any American Indian heritage and proof that all three Cherokee tribes, the Bureau of Indian Affairs, and the Secretary of Interior were notified and reported that A.H. was not eligible for membership.

5

A.H. was placed in foster care on July 15, 2020, and then placed with a relative on September 11, 2020. By then father had only two visits with A.H. DCFS recommended that the child's permanent plan be adoption by his caregiver.

**Permanency planning hearing**

The permanency planning hearing was held on July 13, 2021. Father was present when the juvenile court found that ICWA did not apply, and did not object. The matter was continued, and father was ordered to be present for the continued proceedings.

At the November 8, 2021 continued permanency planning hearing, father was present by telephone. DCFS and the minor's counsel requested that the juvenile court terminate father's parental rights. Father's counsel objected, but offered no argument. The juvenile court found A.H. adoptable, found no exception to adoption applied, and ordered parental rights terminated.

**Notice of appeal**

On November 9, 2021, father filed a timely notice of appeal from the November 8, 2021 juvenile court orders.

## DISCUSSION

### I. Applicable law and standard of review

ICWA and related California statutes reflect the Legislature's intent "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." (25 U.S.C. § 1902; see *In re K.R.* (2018) 20 Cal.App.5th 701, 706, fn. 3.) An "Indian child" is defined as any unmarried person

6

under the age of 18 who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subds. (a), (b).)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.  These requirements are sometimes collectively referred to as the duty of initial inquiry." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741 (*Benjamin M.*).)  "The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  The court and child welfare department "have an affirmative and continuing duty" to inquire whether a child for whom a petition under section 300 may be or has been filed may be an Indian child.  (§ 224.2, subd. (a).)

Under California law, the child welfare department's initial duty of inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2).)

The juvenile court must also inquire at each participant's first appearance in court whether the participant knows or has reason to know that the child is an Indian child. (§ 224.2, subd. (c).) In addition, the juvenile court must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child. (*Ibid*.)

If the "initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.) [I]f that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review a juvenile court's ICWA findings under the substantial evidence test, "'which requires us to determine if reasonable, credible evidence of solid value supports' the court's ICWA finding." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777 (*Dezi C.*).) Even if substantial evidence does not support the juvenile court's ICWA findings, we may not reverse unless that we find that error was prejudicial. (Cal. Const., art. VI, § 13; *Benjamin M., supra*, 70 Cal.App.5th at p. 742.)

At this time, California appellate courts have taken varying positions on the rules for assessing whether a defective initial

8

inquiry is harmless. The varying approaches have led to "a continuum of tests for prejudice stemming from error in following California statutes implementing ICWA." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011 (*A.C.*); see *Dezi C., supra,* 79 Cal.App.5th at pp. 777-778.) Our division has adopted the following rule: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*In re Dezi C., supra,* 79 Cal.App.5th at p. 779.)[3]

## II.    Substantial evidence review

Father contends that although both mother and father denied American Indian ancestry, DCFS failed to ask all of A.H.'s extended relatives whether A.H. had possible Indian heritage. However, DCFS did make appropriate inquiries of MGM, who

---

[3]    The number of appellate decisions on this topic continues to increase, as more recent appellate decisions on this topic, not referenced in *A.C.* or *Dezi C.*, have been published. In *In re E.V.* (2022) 80 Cal.App.5th 691, the Fourth District, Division Three, followed *In re A.R.* (2022) 77 Cal.App.5th 197 in determining that a clear rule of reversal should be followed in all cases where the ICWA inquiry rules were not followed. More recently, in *In re Rylei S.* (2022) 81 Cal.App.5th 309, Division Seven of this court determined that conditional reversal was appropriate where DCFS failed to make a meaningful and thorough inquiry regarding the child's possible Indian ancestry. This recent case law does not change our position on this issue.

9

denied having any Indian ancestry.  Father argues that DCFS did not inquire about Indian ancestry with other extended family members, including maternal relatives Martha R. and Johanna R., and the paternal grandfather Raymond H.

The statutory duty to ask extended family members about a child's possible Indian heritage is imposed by California law on child welfare agencies.  (§ 224.2, subd. (b).)  The failure to inquire of extended family members accordingly is error under state law.  DCFS provides no evidence contradicting father's claim that DCFS failed to inquire of the three extended family members, whose respective contact information was available to DCFS, whether A.H. may be an Indian child.  Because section 224.2, subdivision (b) requires that DCFS ask of extended family members as part of the initial inquiry under ICWA, substantial evidence is lacking to support the juvenile court's ICWA finding.  However, under California law, we may not reverse unless that we find that error was prejudicial.  (Cal. Const., art. VI, § 13; *Benjamin M., supra*, 70 Cal.App.5th at p. 742.)

## C.  Harmless error analysis

Despite the technical violation of section 224.2, subdivision (b), we apply the "'reason to believe' rule" that we adopted in *In re Dezi C., supra*, 79 Cal.App.5th at pages 779-780, and conclude that the error was harmless because nothing in the record suggests a reason to believe that A.H. is an Indian child within the meaning of ICWA.  MGM denied Indian heritage, as did mother.[4]  Father also denied Indian heritage.  There is no special circumstance suggesting that father would not know his own

---

[4]     Mother's claim of a possible link to the Cherokee tribe was refuted by the tribe.

heritage—he was residing with paternal grandfather at the time of his interview.  Father makes no proffer on appeal that he has any Indian heritage, or that he had any information regarding possible Indian heritage on mother's side.  In sum, there is no evidence that any extended relative had any information pertaining to whether A.H. had Indian heritage.  Remand is unwarranted under the circumstances.

## DISPOSITION

The order is affirmed.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.

11