Filed 11/15/24  In re R.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E084178 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2200088) |
| v. | OPINION |
| M.R. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Donal B. Donnelly,

Judge.  (Retired judge of the Imperial Super. Ct. assigned by the Chief Justice pursuant to

art. VI, § 6 of the Cal. Const.).  Reversed with directions.

Jacob I. Olsen, under appointment by the Court of Appeal, for Defendant and

Appellant, M.R.

1

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant, B.G.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel for Plaintiff and Respondent.

INTRODUCTION

M.R. (father) appeals from the juvenile court's order terminating parental rights (Welf. & Inst. Code,[1] § 366.26) as to his child, R.R. (the child). Father contends the matter must be conditionally reversed and remanded because the Riverside County Department of Public Social Services (DPSS) failed to follow up with him or inquire of the paternal grandparents about the child's possible Native American ancestry. B.G. (mother) filed a separate brief joining in father's arguments and also arguing that DPSS failed to inquire of available maternal relative]es. We conditionally reverse the order terminating parental rights and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2022, DPSS filed a petition on behalf of the child, who was one week old at the time.[2] The petition alleged that the child came within the provisions of section 300, subdivision (b) (failure to protect).

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] The petition also included R.H. and O.H., two of mother's children with another father. R.H. and O.H. are not subjects of this appeal.

2

The social worker filed a detention report and stated that mother gave birth to the child on September 6, 2022 and tested positive for methamphetamine and syphilis at delivery. Mother admitted using methamphetamine early in her pregnancy. The child was transferred to the neonatal intensive care unit at the children's hospital to be treated for syphilis and observed for substance abuse withdrawal. The social worker reported that mother's other children, O.H. and R.H., lived with the maternal grandmother (MGM). Mother said she (herself) lived with father and the paternal grandfather (PGF). The social worker stated that father reported he was the child's biological father. However, he did not make himself available to DPSS to interview and only replied in a text message that he would appear at the detention hearing.

On September 7, 2022, DPSS applied for a protective custody warrant, which the court granted.

The court held a detention hearing on September 13, 2022. Mother and father were present and both submitted ICWA-020 forms indicating they had no Indian ancestry. At the hearing, mother's counsel stated that mother indicated she had no Native American ancestry, and father's counsel similarly stated that father was claiming no Native American ancestry. The court detained the child in DPSS's care and noted the child was still in the hospital.

The child was subsequently released from the hospital on September 16, 2022 and placed with the MGM.

3

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on October 21, 2022, recommending that the court sustain the petition and that mother and father (the parents) be offered reunification services. The social worker reported that father denied having any known Native American ancestry on October 3, 2022 and recommended the court find that ICWA did not apply. The social worker also reported that father was raised by his mother and father and had two older sisters. He lived with his father in Corona, and his mother lived in Nebraska.

On October 27, 2022, the court held a jurisdictional hearing. Father requested the matter be set for contest and requested presumed father status. Father's counsel further asked that DPSS assess the paternal grandparents' home, where father was living, for placement. The court set the matter contested and authorized the paternal grandparents' home to be assessed for placement. The court asked both father and mother if he/she had any Native American ancestry, and they both said no.

The court held a contested jurisdiction/disposition hearing on December 6, 2022. The parents were present. The court sustained the petition, declared the child a dependent, and removed him from the parents' custody. The court ordered the parents to participate in reunification services and set a six-month review hearing for May 23, 2023.

*Six-month Status Review*

The social worker filed a six-month status review report on June 15, 2023, requesting the court to continue reunification services. The social worker reported that,

4

during this reporting period, the MGM said the child had no Indian ancestry. The social worker further reported that, on May 22, 2023, mother again denied having Indian ancestry; however, father reported he recently found out that he had Native American ancestry, but said he had no information as to which tribe or if he was eligible for enrollment with said tribe. The social worker still recommended the court find that ICWA did not apply and that the child was not an Indian child.

The court held a six-month review hearing on June 27, 2023. The court asked mother and the MGM if they had any Indian ancestry, and they both said no. When the court asked father, he said he just found out that he had Indian ancestry on his mother's side. When the court asked if he knew which tribe or nation, father said he did not know, but he could find out from his mother. The court directed DPSS to follow up with father on that information. The court adopted the recommended findings and set a 12-month hearing for October 17, 2023. The hearing was subsequently continued.

*Twelve-month Status Review*

The social worker filed a 12-month status review report on October 5, 2023 and recommended that services be terminated. The social worker again reported that ICWA did not apply, and that father said, on May 22, 2023, he found out he had Indian ancestry but had no information about which tribe. The social worker stated that mother reported she lived with father, and they resided with the PGF in Riverside County.[3]

---

[3] We note that, in another part of the same report, the social worker said father was not available for interview, and that he resided with mother "in Riverside County in temporary housing."

*[footnote continued on next page]*

On November 8, 2023, the MGM filed a request to be declared the child's de facto parent. The court set the matter for a hearing.

In an addendum report, the social worker reported that, from November 13, 2023 to December 4, 2023, she texted father multiple times and called him at a certain number, and the call could not be completed. The social worker contacted the MGM and got another phone number for him. The social worker tried to contact him at that number, and the call also could not be completed.

On December 21, 2023, the court held a contested 12-month hearing, as well as a hearing on the de facto parent request. Mother was present but father was not; both were represented by counsel. The court adopted the social worker's findings and recommendations. It found that the parents had made failed to make substantive progress in their case plans, terminated their reunification services, and set a section 366.26 hearing. The court ordered DPSS to prepare an adoption assessment report. It also granted the MGM's request for de facto parent status.

On February 8, 2024, the social worker reported that she submitted a request for "Person Locator assistance," and that father was located on February 7, 2024 via telephone. Father reported that he was "staying place to place" but he could receive mail at his father's address.

*Section 366.26*

On April 5, 2024, the social worker filed a section 366.26 report recommending that the child remain a dependent, adoption be the permanent plan, and the section 366.26 hearing be continued for 60 days to allow time for the preliminary adoption assessment to be completed. The report indicated that ICWA did not apply. As to ICWA, the social worker reported that mother and the MGM denied Indian ancestry on September 30, 2023, and that, on May 22, 2023, father said he recently found out he had Indian ancestry but did not know the tribe or if he was eligible for enrollment. The social worker further reported that, on March 28, 2024, she attempted to get an ICWA update from mother, but mother's voicemail box was full, so she could not leave a message. The social worker also attempted to call father that day, but his phone number was no longer working. The MGM continued to report she had no Indian ancestry. The social worker concluded there was no new information to indicate Native American ancestry.

The social worker additionally reported that, throughout the case, the child had "been able to maintain family connections with maternal relatives," as he was placed with the MGM on September 16, 2022. The social worker reported that contact or attempted contact with the parents was made "in order to discuss visitation, any needs or other concerns" on September 30, 2023, October 17, 2023, October 20, 2023, October 24, 2023, November 1, 2023, February 14, 2024, and February 22, 2024.

The court held a section 366.26 hearing on April 18, 2024. Mother was present, but father was not. DPSS requested a continuance and requested that the court authorize

7

service on father's counsel. The court noted there was a report indicating that DPSS made four attempts on different days, at different times, to serve father at the address he provided, but no one was there. Father's counsel objected to service to himself, noting that father was currently in the hospital and that mother just provided an address for him. The court denied the request to serve father's counsel and continued the matter to June 13, 2024. The court again asked mother and the MGM if they had any Native American ancestry, and they said no. The court also authorized dispensing with statutory notice to mother and father, at DPSS's request.

DPSS contacted the hospital to find out whether father was a current patient, and the staff stated he was discharged on April 17, 2024, and there was no record of him being seen at the hospital on April 18, 2024.

On May 29, 2024, the social worker filed an addendum report and attached a preliminary adoption assessment. The preliminary adoption assessment recommended the court proceed with adoption with the MGM. The MGM reported that she had three children (two girls and a boy) from her only marriage, that she and her husband were divorced, but remained amicable, and that all three children have a good relationship with him. The MGM said she was very close with her three children and she sees her son and his family at least once a week.

The court held a section 366.26 hearing on June 13, 2024. Mother and father were present. Mother's counsel and father's counsel asked the court to consider legal guardianship for the child. Counsel for the child pointed out that the parents had

8

inconsistent visitation, that the child had been in the MGM's care practically since birth, and that the MGM had a favorable preliminary adoption assessment. The child's counsel added, "We do have supportive extended family members, and this prospective adoptive parent, the caregiver, is also a relative to this child." She then asked the court to terminate parental rights and declare the MGM the prospective adoptive parent.

The court terminated parental rights as to the child and found adoption to be in his best interest.

## DISCUSSION

### The Matter Should Be Remanded for Further Inquiry

Father contends the juvenile court did not have sufficient evidence upon which to base its finding that ICWA did not apply since DPSS failed to follow up with him about his claimed ancestry, as the court directed, and did not inquire of the paternal grandparents. Mother joins in father's claims and also contends that DPSS failed to inquire of all known and available extended relatives, including paternal aunts, the maternal grandfather (MGF), a maternal aunt and uncle, maternal great grandparents, maternal great cousins, and maternal great aunts and uncles. She additionally claims there is no record that DPSS asked the parents about "the existence of any other such relatives who might know more about the family's history." DPSS argues it was not obligated to interview extended family members as part of its initial inquiry, pursuant to *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), since the child was brought into protective custody pursuant to a warrant. However, DPSS notes there is a split of

9

authority regarding the application of section 224.2, subdivision (b). Alternatively, DPSS asserts that it inquired of the parents and the MGM, and they repeatedly denied Native American ancestry. DPSS claims the information provided by the parents and the MGM "definitively indicates [the child] is not an Indian child." DPSS also contends that father's statement of Indian ancestry did not provide a reason to believe the child was an Indian child, so no further inquiry was required. We conclude the matter should be remanded for further inquiry.

A. *Applicable Law*

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R*. (2022) 82 Cal.App.5th 671, 678, disapproved on other grounds, as stated in *In re Dezi C*. (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C*.).) DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 430 (*Antonio R.*).)

The continuing duty can be divided into two phases—the initial duty to inquire and the duty of further inquiry. (*In re T.G.* (2020) 58 Cal.App.5th 275, 290 (*T.G.*).) The duty of initial inquiry "begins for a county when first contacted regarding a child,

10

including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (b)(1).) "At the first contact with the child and each family member, including extended family members, the county welfare department … has a duty to inquire whether that child is or may be an Indian child." (*Ibid.*) Extended family members include adults who are the child's stepparents, grandparents, aunts, uncles, brothers, and sisters. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) At the first hearing on a petition, the court must ask each party and all other interested persons present "whether they know or have reason to know that the child is an Indian child," and the court must "instruct the parties and persons present to inform the court if they subsequently receive information that provides reason to know the child is, or may be, an Indian child." (§ 224.2, subd. (c).) The court must also order each parent to complete a Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C) & (3).)

"Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*); § 224.2, subd. (e).) There is reason to believe a child is Indian when there exists "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).) Further inquiry includes, but is not limited to, interviewing the parents and extended family members, contacting the BIA and the State

11

Department of Social Services for assistance in identifying the tribes in which the child may be a member, and contacting the relevant tribe and "any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(C); Cal. Rules of Court, rule 5.481(a)(4).) "[I]f that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)

DPSS is obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*).) Further, the juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*Ibid.*) If the court finds that DPSS has complied with its duty of inquiry and there is no reason to know that the child is an Indian child, then the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) "A juvenile court's finding that ICWA does not apply implies 'that social workers had fulfilled their duty of inquiry.'" (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 567 (*Dominick D.*).) "'We review a court's ICWA findings for substantial evidence. [Citations.] "We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance."'" (*Id.* at p. 567.)

12

B.  *The Court's ICWA Finding Is Not Supported by Substantial Evidence Since DPSS Failed To Comply With Its Duty of Inquiry*

At the outset, we address DPSS's assertion regarding the dispute as to whether the duty of initial inquiry applies to extended family members when the child was taken into custody pursuant to a warrant.  (See *Robert F.*, *supra*, 90 Cal.App.5th 492, review granted July 26, 2023, S279743 and *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447.)  The recent passage of Assembly Bill No. 81 resolved that dispute.  Section 224.2, subdivision (b)(2), now provides that when a child is taken into custody "pursuant to a warrant described in Section 340," the initial inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

Applying the current version of section 224.2, subdivision (b), as amended by Assembly Bill No. 81, we agree with the parents that DPSS had a duty to inquire of the paternal grandparents, paternal aunts, the MGF, and the maternal aunt and uncle, since they qualified as extended family members.  The term "extended family member" is statutorily defined as "a person who has reached 18 years of age and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (§ 224.1, subd. (c)(1).)  Notably, the social worker made reference to the paternal grandparents, paternal aunts, the MGF, and

13

the maternal aunt and uncle, in different reports. DPSS was obligated "to make a meaningful effort to locate and interview [them] to obtain whatever information they may have as to the child's possible Indian status." (*K.R.*, *supra*, 20 Cal.App.5th at p. 709.) However, the record contains no discussion of its efforts to locate and/or interview them.

We note that mother's claim regarding the maternal great grandparents, great cousins, and great aunts and uncles, has no merit since DPSS had no duty to inquire of them, as they do not qualify as extended relatives. (§ 224.1, subd. (c)(1).) Furthermore, as to mother's claim that DPSS did not ask the parents about "the existence of any other such relatives who might know more about the family's history," we note that "section 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)

Furthermore, in addition to failing to inquire of the enumerated relatives above, DPSS erred in failing to follow up with father regarding his claim of Indian ancestry. At the six-month hearing, he informed the court that he recently found out he had Indian ancestry on his mother's side. When the court asked if he knew which tribe or nation, father said he did not know, but he could find out from his mother, and the court directed DPSS to follow up with him on that information. However, there is no indication in the record that DPSS did so. DPSS argues that, despite his claim that he had new

14

information about his ancestry, father "gave no reason to believe that [the child] was an Indian child." We disagree. There is a reason to believe a child is Indian when there exists "information *suggesting* that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1), italics added.) Father's statement, at a minimum, suggested he had Indian ancestry, and the court accordingly directed DPSS to follow up on the information.

DPSS asserts that when it attempted to gather more information from father, he did not make himself available to be interviewed. While the record does indicate father was difficult to locate at times, it appears that he was eventually reachable. At the hearing on April 18, 2024, father's counsel informed the court that father was currently in the hospital and that mother just provided an address for him. Subsequently, father was present at the hearing on June 13, 2024. Nonetheless, the record does not indicate that DPSS followed up with him about his Indian ancestry claim. We note the record also does not indicate DPSS attempted to inquire of the PGM, through whom father claimed Indian ancestry.

DPSS concedes that it did not investigate "the paternal grandmother, paternal aunts, maternal aunts, uncles, or cousins as part of its normal course of work." It then asserts that those relatives and others never contacted DPSS to request visits with DPSS. To the extent DPSS may be claiming the extended relatives had any responsibility with regard to ICWA, we note that "[t]he duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or

15

members of the parents' families." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 430; see also, *T.G.*, *supra*, 58 Cal.App.5th at p. 293.) DPSS then argues "there is no evidence the above relatives would provide new or different information about [the child's] status as an Indian child when compared against the evidence provided by" the parents and the MGM. However, as the Supreme Court recently held in *Dezi C.*, "[w]hen a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.) Accordingly, the Supreme Court held that "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Ibid.*)

Therefore, because the paternal grandparents, paternal aunts, the MGF, and the maternal aunt and uncle, were not asked about the child's possible Indian ancestry, the court should not have found that ICWA did not apply. (See *In re K.T.* (2022) 76 Cal.App.5th 732, 744.) Further inquiry of these relatives, as well as father, is still required. The order terminating parental rights must therefore be conditionally reversed, and the matter remanded for DPSS to make the proper inquiry. (§ 224.2, subds. (b) and (c).) If the inquiry reveals a reason to believe the child is an Indian child, the court shall

16

proceed in conformity with ICWA and California implementing provisions. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1152.)

## DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 (and, if applicable, the notice provisions as well) — specifically, to inquire of the paternal grandparents, paternal aunts, the MGF, and the maternal aunt and uncle regarding the child's Native American ancestry. If, after completing the inquiry, neither DPSS nor the court has reason to believe or know the child is an Indian child, the order terminating parental rights shall be reinstated. If DPSS or the court has reason to believe that the child is an Indian child, the court shall proceed in conformity with ICWA and California implementing provisions.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

CODRINGTON
        Acting P. J.

RAPHAEL
                J.

17