Filed 5/29/25  In re N.W-A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.W-A., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,  Plaintiff and Respondent,  v.  Z.W.,  Defendant and Appellant. | E084982  (Super.Ct.No. DPRI2400286)  OPINION |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Affirmed in part; conditionally reversed with directions.

Clare M. Lemon, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Larisa R-McKenna, Deputy County Counsel, for Plaintiff and Respondent.

1

Z.W (mother) appeals from the juvenile court's jurisdictional and dispositional orders as to her child, N.W-A. (the child). Mother's sole contention on appeal is that the juvenile court and the Riverside County Department of Public Social Services (DPSS) failed to comply with their duty of initial inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California statutes. DPSS concedes error. We vacate the court's finding that ICWA did not apply and remand for compliance with ICWA and related California law, but otherwise affirm the jurisdictional and dispositional orders.

## PROCEDURAL BACKGROUND

On July 18, 2024, DPSS filed a Welfare and Institutions Code[1] section 300 petition on behalf of the child, alleging he came within subdivisions (b) (failure to protect) and (g) (no provision for support). The child lived with mother, and the whereabouts of his father, L.A. (father), were unknown. A California Judicial Council Forms, form ICWA-010 (Indian Child Inquiry Attachment) was filed with the petition, stating that mother was questioned and gave DPSS a reason to believe the child was an Indian child.

The social worker filed a detention report and stated that the child was placed into protective custody on July 16, 2024, and placed in a home the next day. The social worker further reported that mother said she believed she had Indian ancestry with the

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

Sioux tribe, although she was unable to specify which Sioux tribe or give a registration number. Mother was also unable to confirm if anyone in her family was a registered member, and she would not provide any family names or contact information for DPSS to obtain additional details.

The court held a detention hearing held on July 19, 2024, and mother appeared. The court addressed her and noted she had indicated in her paperwork that she had Sioux ancestry on her mother's side. Mother confirmed and added she believed she had Blackfoot and Cherokee ancestry as well from her grandmother, L.S. The court directed DPSS to follow up on the information mother provided and detained the child in foster care.

On August 8, 2024, the social worker filed a jurisdiction/disposition report stating that on August 2, 2024, father denied that he or the child had any Native American ancestry. That same day, mother said she did not want to share her ICWA status, as she felt it was her family's personal business. The social worker further reported that a paternity test referral was submitted for father. Subsequently, the paternity test results indicated he was the child's father. Father reported that he had three sisters and two stepbrothers, and that he maintained good relationships with his mother and youngest sister. The social worker stated that ICWA may apply. Furthermore, the social worker reported that the paternal grandmother (PGM) was being assessed for placement.

The court held a jurisdiction hearing on August 13, 2024, and father's counsel set the matter for contest.

3

DPSS submitted to the court tribal response letters from multiple Sioux and Cherokee Indian tribes. All of these tribes indicated the child was not enrolled and/or was not eligible for enrollment with their tribe.[2] DPSS subsequently submitted more tribal response letters from various Indian tribes indicating that the child was not eligible for enrollment.

The court held a contested jurisdiction hearing on September 20, 2024, at which counsel for the child asked the matter to be set for contest. Father was present, and the court asked if he was aware of any Indian ancestry in his family, and he replied, "I was told by my [maternal] grandmother that I have Choctaw in my bloodline, but I'm sure it's watered down too much to look into that further." The court ordered DPSS to follow up with father's statement regarding his potential Choctaw ancestry. It then set the next hearing for October 21, 2024.

On September 26, 2024, the PGM filed a section 388 petition, asking the court to place the child in her home.

The social worker filed an addendum report on October 16, 2024, changing some of her recommendations. She also reported that she met with the PGM and completed an assessment of her home. The social worker recommended the court find that ICWA may apply.

On October 21, 2024, the social worker filed an amended petition, striking the allegation under section 300, subdivision (g). That same day, the court held a contested

_____

[2] DPSS also indicated that it gave notice of the contested jurisdiction/disposition hearing to numerous other Sioux, Blackfoot, and Cherokee tribes.

jurisdiction hearing, and county counsel asked the court to sustain the amended petition, order reunification services for mother and father, grant the PGM's section 388 petition, and find that ICWA did not apply. The court sustained the amended petition, declared the child a dependent, removed him from the parents' custody, and granted the PGM's petition. The court also stated that, based on the information currently before it, ICWA did not apply.

## DISCUSSION

### The Matter Should Be Remanded for Further Inquiry

Mother contends the juvenile court and DPSS failed to comply with their duties of initial and further inquiry regarding father's possible Choctaw ancestry; thus, there was insufficient evidence to support the court's finding that ICWA did not apply. She requests this court to reverse the jurisdiction and dispositional findings and orders and remand the matter for compliance with ICWA. DPSS concedes it failed to comply with its initial duty of inquiry as to the PGM, and it acknowledges that the court ordered it to follow up with father's statement regarding potential Choctaw ancestry. However, DPSS argues there is no need to vacate any findings and orders since its ICWA duties are continuing. We vacate the ICWA finding and remand for compliance with ICWA and related California law, but otherwise affirm the jurisdictional and dispositional orders.

A. *Applicable Law*

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law

5

implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, disapproved on other grounds, as stated in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)

Under California law, the juvenile court and social services agency have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a).) This duty consists of three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) "First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

As to the initial duty of inquiry, section 224.2, subdivision (b) "specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'"

(*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.) Extended family members include adults who are the children's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

B. *The Court's ICWA Finding Is Not Supported by Substantial Evidence Since DPSS Failed to Satisfy its Duty of Inquiry*

Section 224.2 required DPSS to inquire of the child's extended family members regarding his possible Indian ancestry, and it was error for DPSS to fail to do so. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; *In re J.W.* (2022) 81 Cal.App.5th 384, 389 [error not to ask the mother's extended family members about their Indian ancestry despite having contact with a grandmother, uncle, and aunt].) The PGM was available for inquiry throughout the case. Yet, nothing in the record suggests she was asked about the child's Indian ancestry. Furthermore, there is no indication that DPSS inquired of any paternal extended relatives. By failing to ask the PGM or other extended relatives about the child's Indian ancestry, DPSS failed to discharge its duty of initial inquiry. (*In re Dominick D.* (2020) 82 Cal.App.5th 560, 567 (*Dominick D.*).) Moreover, as DPSS concedes, the court ordered DPSS to follow up with father's statement regarding his Choctaw ancestry, but it failed to do so. Yet, the court found that ICWA did not apply.

7

"ICWA inquiry and notice errors do not warrant reversal of the juvenile court's jurisdictional or dispositional findings and orders other than the ICWA finding itself." (*Dominick D., supra*, 82 Cal.App.5th at p. 567.) The appropriate disposition is to affirm the findings and orders, but vacate the finding that ICWA does not apply, and "direct the juvenile court on remand to order [DPSS] to comply with its inquiry and (if applicable) notice obligations under ICWA and related California law." (*Id*. at pp. 567-568.)

DPSS contends there is no need to vacate the ICWA finding because ICWA obligations are continuing duties. In support of its position, DPSS cites *In re Baby Girl M.* (2022) 83 Cal.App.5th 635 (*Baby Girl M.)*, in which the father argued the county agency failed to comply with its obligations under ICWA and related California law. (*Id.* at pp. 636-637.) However, in that case, the court dismissed the appeal as moot, since no effective relief could be granted, as the county agency started complying with its inquiry duties after the appeal was filed. (*Id.* at pp. 638-639.) Here, there is no indication DPSS has started complying with its duties. We note that, in the past, DPSS was obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) *Dezi C*. recently explained that section 224.2 does not require DPSS to locate and interview "every possible extended family member," but only those who are "reasonably available to help the agency with its investigation." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) However, DPSS's efforts here were grossly inadequate.

8

We acknowledge that the First District Court of Appeal, in a case with a similar procedural posture as the instant case, chose to simply affirm the dispositional order and did not vacate the ICWA finding. (*In re S.H.* (2022) 82 Cal.App.5th 166, 179-179.) However, we follow our court's disposition in *Dominick D.* and vacate the ICWA finding and remand for compliance. (*Dominick D., supra*, 82 Cal.App.5th at pp. 567-568.)

## DISPOSITION

The finding that ICWA does not apply to the proceedings is vacated and the matter is remanded to the juvenile court. The juvenile court is directed to order DPSS to comply with its inquiry and (if applicable) notice obligations under ICWA and related California law. In all other respects, the jurisdiction and dispositional findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:

McKINSTER

Acting P. J.

MILLER

J.

9