Filed 7/7/25  In re R.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085512 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J290093, J290094 & J290095) |
| v. | OPINION |
| G.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Conditionally reversed and remanded with directions.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

In this appeal, defendant and appellant G.M. (mother) contends plaintiff and respondent San Bernardino County Children and Family Services (CFS) failed to satisfy the duty of initial inquiry regarding both the paternal and maternal extended family members as required by the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare and Institutions Code[1] section 224.2, subdivisions (b) and (e). We conditionally reverse and remand with directions.

## I. PROCEDURAL BACKGROUND AND FACTS

*A. Petition and Detention.*

This case involves three of mother's children: I.M. (born 2011), R.M. (born 2013), and R.R. (born 2015).[2] In August 2021, CFS filed a petition alleging mother's children were at substantial risk of harm due to the parents' substance abuse and domestic violence (§ 300, subd. (b)(1)), and fathers' whereabouts were unknown (§ 300, subd. (g)). During an in-person conversation, mother claimed she may have Cherokee ancestry but denied being a member of the tribe or knowing anyone that was a member because she was adopted. As for father R.Ro., mother shared that he has not been around R.M. and R.R. since 2019 when she obtained a restraining order against him. As for father G.O., mother claimed he is not on I.M.'s birth certificate nor has he ever met his child.

At the detention hearing on August 9, 2021, the juvenile court made ICWA inquiries of mother; she claimed her biological mother's DNA test shows Indian

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

[2] R.Ro. is the presumed father of R.R. and R.M.; R.Ra. is the alleged father of R.M.; and G.O. is the biological father of I.M. None are parties to this appeal.

ancestry,[3] but she was unaware of any tribe or tribes. The court noted the report mentioned a possibility of Cherokee, and mother replied, "That might be a possibility. I believe I remember her saying something like that." She denied any Indian ancestry through her adoptive parents, and her Judicial Council Form, form ICWA-020 indicated no Indian ancestry. The court found a prima facie case for detention, requested CFS further inquire into mother's Indian ancestry, detained and removed the children from parents, and ordered supervised visitation and that fathers complete form ICWA-020.

B. *Jurisdiction/Disposition Reports and Hearing.*

The jurisdiction/disposition report, filed August 25, 2021, recommended the children be removed from the parents and placed in out of home care and reunification services be provided. CFS unsuccessfully searched for father R.Ro. and father O.M. Mother revealed that she was born and raised in San Bernardino County; she never met her biological father and has a distant relationship with her biological mother (BMGM). She stated that she is one of nine siblings but does not have a good relationship with them. She was adopted by her great aunt (now deceased) due to her biological parents severe substance abuse issues, and to her knowledge there is no further Indian ancestry and/or information. On August 23, mother stated BMGM took a DNA test that indicated Indian American ancestry, but she has never been a tribal member, did not attend triable schools, and was not raised on a reservation. Mother was married to, and living with,

---

[3] Because ICWA uses the term "Indian," we may do the same for consistency, even though we recognize that "other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 739, fn. 1.)

A.M. who "had a child removed from his care." Mother had no family members to assess for placement; however, CFS continued identifying relatives and inquiring about possible Indian ancestry. The juvenile court found all of the allegations (except one) true, but continued the disposition hearing to allow CFS to complete ICWA noticing.

On September 27, 2021, CFS informed the juvenile court that mother identified the BMGM as L.C.R. and provided her phone number. The social worker called the number and heard, "If these are my children, and this is an emergency, call your dad." The social worker contacted mother's sister, maternal aunt J.P., who reported that to her knowledge, they have Indian ancestry via the BMGM's father (biological maternal great grandfather, MGGF) who was Indian and an enrolled member. However, the maternal aunt did not know her grandfather's name, when he passed away and/or any other information about him; she stated "that there are no other relatives who would be available to provide further information about their Indian Ancestry."

On September 28, 2021, the juvenile court found the following: R.Ro. is the presumed father of R.R. and R.M. and G.O. is the biological father of I.M.; the children do not come under the provisions of ICWA; and there are no known maternal or paternal relatives available for a concurrent planning home placement. A six-month review hearing was set.

C. *Six-month Review Report and Hearing.*

In March 2022, CFS recommended services continue for mother, but terminate for father R.Ro. CFS had yet to locate him or father G.O. Mother maintained the BMGM

4

found Native American heritage through an ancestry DNA test, but was unaware whether she was enrolled in a tribe or receiving any services from a tribe. On mother's "Family Find and ICWA Inquiry: CFS 030 Form," she did not identify any maternal/paternal relatives. The social worker was unable to make ICWA inquiries of R.Ro. because his whereabouts remained unknown, and CFS was not made aware of any paternal family members. Mother is one of nine siblings, but was close to her younger sister only. She stated she does not have a good relationship with most of her siblings and has filed a restraining order against a brother and sister. On March 28, the juvenile court terminated services for father R.Ro. and set a 12-month review hearing.

*D. Twelve-month Review Report and Hearing.*

According to its 12-month review report, CFS reported no new information as to its ICWA inquiry. On September 14, 2022, the juvenile court continued services for mother and set an 18-month review hearing. There was no mention of ICWA.

*E. Eighteen-month Review Report and Hearing.*

In its 18-month review report, CFS reported that on January 5, 2023, mother was asked about her Indian ancestry and she denied having any; both father R.Ro.'s and father G.O's whereabouts were unknown. CFS also noted the juvenile court's prior finding on September 28, 2021, that ICWA did not apply. Mother identified maternal great aunt E.F., maternal aunt A.M., roommates S.S., M.G. and A.M.M., and friends R.M. and L.M. as part of her safety network. Mother reported her husband was incarcerated with a potential release date of April 2023, but she will not allow him back in her home. On

5

February 6, 2023, the juvenile court terminated services for mother, but continued the children in foster care with a permanent plan of returning home. Unsupervised visitation with mother was ordered, and the matter was continued to August 7, 2023, for a postpermanent plan review appearance.

*F. Special Hearing.*

On June 30, 2023, visitation was returned to supervised due to mother's relapse to using drugs.

*G. Postpermanent Plan Review Report and Hearing.*

According to CFS's status report filed August 3, 2023, a social worker asked mother about her Indian ancestry on July 25, and she repeated that BMGM has Cherokee ancestry, but has never been a tribal member, never attended tribal schools, and was not raised on a reservation. Mother was adopted by her great aunt and to her knowledge, there is no further ancestry/information available. CFS opined that noticing is not warranted. Mother also reported she was pregnant with a due date of January 29, 2024. On August 7, the juvenile court maintained supervised visitation, and set a section 366.26 hearing.

*H. Section 366.26 Report, Further ICWA Inquiries, and Hearing.*

In its section 366.26 report filed November 28, 2023, CFS recommended the children receive permanency planning services from Children's Adoptive Services, termination of parental rights, and adoption as the permanent plan. The social worker reiterated mother's prior responses to ICWA inquiries (regarding the BMGM). On June

6

29, 2023, father G.O. denied Indian ancestry. Father R.Ro. had "not made himself available to the Department." The social worker spoke to maternal great aunt E.F., mother's roommate M.G., and mother's friend D.C.; all denied Indian ancestry. Roommate S.S. and friend L.M. had no knowledge of the children's Indian ancestry. The hearing was continued.

In an addendum report filed January 12, 2024, CFS informed the juvenile court about its further ICWA inquiries. Social workers checked with family (father G.O., and the maternal great aunt E.F.) and nonrelative extended family members (roommates S.S. and M.G., and friends L.M. and D.C.), but all denied knowledge of the children's Indian ancestry. Mother and BMGM indicated ICWA may apply. BMGM acknowledged taking a DNA test and reported Native American ancestry from her biological father, MGGF. BMGM never actually met the MGGF, but said he was in the United States Marines. CFS sent inquiries to The Cherokee Nation, Eastern Band of Cherokee Indians, United Keetoowah Band of Cherokee Indians in Oklahoma, Chitimacha Tribe of Louisiana, and the Bureau of Indian Affairs (BIA), and had not yet received responses. The ICWA review hearing was continued.

On February 23, 2024, CFS informed the juvenile court that mother recently denied having Native American ancestry and membership in a tribe. The social worker's attempts to contact father R.Ro. were unsuccessful. The Cherokee Nation indicated the children are not Indian children. On March 4, 2024, CFS sought a 30-day ICWA review hearing based on the belief "there's still maternal relatives that need to be inquired from,

7

including the maternal relatives that are the caretakers for the baby,[4] the sibling" who was not in any of the reports.  The ICWA review hearing was confirmed for April 3.

On March 18, 2024, mother reported her "little sister" by adoption is a maternal aunt, A.M., but mother had no contact number.  That same day, the social worker talked to C.J., maternal aunt,[5] who confirmed checking her DNA that indicated she is more than 54 percent Native American on her father's side, possibly with Chitimacha Tribe.  C.J. confirmed MGGF's name, but she had no birth or death date for him and none of the family members she called were able to provide the information.  CFS sent a certified letter on March 18, 2024, to the Chitimacha Tribe in Louisiana.  On April 3, 2024, the juvenile court vacated the section 366.26 hearing, but continued the matter for a postpermanent planning review hearing.

In the status review report filed September 30, 2024, CFS reiterated its prior ICWA inquiries; it recommended the children remain with their current caregivers and a section 366.26 hearing be set to establish a permanent plan of adoption.  On October 3, a section 366.26 hearing was set, and mother was advised of her appellate rights.  The juvenile court also set an ICWA notice review hearing, which was continued many times.

On November 18, 2024, CFS informed the juvenile court that mother again denied having Native American ancestry.  The maternal aunt, C.J., stated Indian ancestry is possible because the BMGM's DNA test indicated 54 percent Native American.

---

[4]  Mother had a girl named R.L.L.H.

[5]  Although C.J. is identified as the maternal grandmother, other references identify her as a maternal aunt whose mother is the BMGM.

8

However, maternal aunt had no other information. The social worker talked to BMGM who stated "she is Native American on her father's side[,] . . . 59-61%, but is 'not in the books.'" She also had no further information on her father except "they are 'Chichiwaka' from Arizona." An inquiry was sent to the BIA on November 13. The children no longer wanted to visit mother; they wanted to be adopted. CFS continued to search for father R.Ro. and father G.O.

On December 27, 2024, CFS updated the juvenile court on its ICWA inquiries. The social worker asked for contact information for maternal aunt A.M. and BMGM's aunt, E.A., but mother's only contact with A.M. was via Instagram, and she has no contact with E.A. because she does not speak to her. The maternal aunt C.J. was also unable to provide contact information for either person, explaining she only sees A.M. once in a while and she has no communication with E.A. Similarly, BMGM was unable to provide any contact information for A.M. or E.A. When asked how to spell her father's tribe, she stated, "C-H-I-W-A-C-K-A." Unable to find a Chiwacka tribe that is federally recognized, the social worker sent a written ICWA inquire to the Chitimacha Tribe of Louisiana on December 20. The BIA received CFS's November 13, 2024 letter on December 3.

In its section 366.26 report filed January 17, 2025, CFS recommended the children receive permanency planning services from Children's Adoptive Services, termination of parental rights, and adoption as the permanent plan. The social worker reiterated CFS's prior ICWA inquiries, adding she was awaiting responses from the BIA and the

9

Chitimacha tribe of Louisiana. No new relatives were identified as willing and able to be of support of the children.

On January 31, 2025, County Counsel informed the juvenile court that all relatives that were previously identified have been contacted with the exception of A.M. and E.A. because no relative had contact information for them. Counsel stated inquiry letters were sent to three Cherokee tribes, the Chitimacha Tribe of Louisiana, and the BIA; neither mother nor the children were registered members. He added "[t]he other tribes did not respond, but those letters were sent a little over a year ago, so I think sufficient time has passed." The court inquired if any counsel had additional information on ICWA. All (including mother's counsel) replied, "No, your Honor." The court concluded CFS "has met their burden of inquiry and . . . ICWA does not apply." Following further argument from mother's counsel, the court found the children adoptable, terminated all parental rights to them, and selected adoption as the permanent plan.

## II. ANALYSIS

Mother's sole contention is that CFS "failed in its inquiry efforts under section 224.2, subdivisions (b) and (e), as to both the paternal and maternal sides of the family, rendering the ICWA finding at the section 366.26 hearing in January 2025, insubstantially supported."

"California's statutory scheme imposes a duty of initial inquiry on both the department and the court. The department's duty arises when a report of abuse or neglect is made and/or when the county takes the child into its temporary custody. [Citation.]

10

The inquiry 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' [Citation.] Then, on the first appearance upon a petition, 'the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' [Citations.]" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099, fns. omitted.)

When conducting an inquiry investigation, the operative concept is to inquire of those people who are reasonably available to assist the department with its investigation into whether the child has any potential Indian ancestry. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140 (*Dezi C.*).) A reasonable inquiry and adequate ICWA investigation do not require an inquiry of every possible extended family[6] in every case. (*Dezi C.* at p. 1140.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'" (*Id.* at p. 1141.)

---

[6] Extended family members include adults who are the children's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)

*A. Paternal Indian Ancestry.*

Mother asserts CFS was not diligent in its efforts to inquire of father R.Ro. and father G.O. about their Indian ancestry.

*1. R.Ro.*

As a threshold matter, CFS argues mother may not claim CFS's inquiry of paternal extended family members was insufficient because ICWA does not apply to nonbiological relationships and there is no finding that R.Ro., designated as a presumed father, is R.R.'s or R.M.'s biological father. In response, mother asserts this argument is "disingenuous because although section 224.1 defines a parent as someone with a biological or adoptive connection to the minor, at least as to minor [R.R.], mother was adamant during the paternity inquiries that [R.Ro.] is the only possible father for minor [R.R.]." Nonetheless, R.Ro. remains a presumed father, and status as a presumed father by itself does not trigger ICWA's notice requirements. (See 25 U.S.C. § 1903(9) [defining "parent" as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom"]; *In re C.A.* (2018) 24 Cal.App.5th 511, 519-521 [ICWA notice not required for a presumed father who was not biological or adoptive father]; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 ["Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged

12

father"].) Accordingly, nothing further was required of CFS regarding its inquiry into R.Ro.'s Indian ancestry.

### 2. *G.O.*

With one exception, G.O.'s whereabouts were unknown. In June 2023, the social worker spoke with him one time and inquired about his Indian ancestry; he denied having any. CFS's further attempts to contact him were unsuccessful. Mother acknowledges that G.O. did not appear or participate in the case; however, she argues CFS should have asked him about his family members, or attempted to obtain their contact information to inquire as to his family's potential Indian ancestry, as required by section 224.2, subdivision (b)(2).[7] We agree.

Although CFS asked G.O. about his child's ancestry, there is no record of it asking him for information about any other paternal relatives who might have information. The duty to inquire does not stop at asking a single relative about possible Indian ancestry: "a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) We cannot say CFS made a meaningful effort to locate and interview paternal relatives when

---

[7] "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, . . . extended family members, [and] others who have an interest in the child, . . . whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b)(2).) However, section 224.2 "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are *reasonably available* to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140, italics added.)

it stopped at locating and contacting G.O., without making any record of whether it asked him about additional paternal relatives who might have information. A social worker may have made such inquiry; however, the record fails to document it. Though "ICWA does not obligate the court or [the department] 'to cast about' for investigative leads," it also does not allow the department to escape its duty of inquiry by simply failing to investigate. (*In re A.M.* (2020) 47 Cal.App.5th 303, 323, disapproved on other grounds in *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

Thus, we conditionally reverse the order terminating mother's parental rights.

### B. *Maternal Indian Ancestry.*

Regarding mother's Indian ancestry, she argues CFS's inquiry was deficient because it should have questioned the children's extended family members, including the maternal grandparents, the maternal aunts and uncles, the stepparents, and cousins. Mother points out that she has nine siblings, but only two were asked about their Indian ancestry. Acknowledging she did not have their contact information, she asserts "the social worker spoke to the maternal grandmother several times, and two of the maternal aunts, and certainly between these three relatives, they could come up with the contact information, or at the very least the names, of the seven other aunts and uncles." Also, mother faults CFS for failing to question her husband and the maternal relative who was caring for mother's newborn baby about the children's potential Indian ancestry. Finally, mother complains that CFS failed to attempt to ascertain the identity of her father.

According to mother, CFS's failings amount to a violation of section 224.2, subdivision (b)(2).

Similar to our conclusion regarding G.O., we find the record fails to show that CFS asked mother's husband (stepfather A.M.) and all[8] of her relatives (including the one who was caring for mother's new baby/the children's halfsibling, R.L.L.H.) for information about any maternal relatives (including mother's biological father) who might have information on the children's ancestry. Thus, we conditionally reverse the order terminating mother's parental rights and remand the case for further proceedings to address compliance with the inquiry and notice provisions of ICWA. In doing so, we do not, of course, mean to imply that CFS must "cast about" for information or pursue unproductive investigative leads, or that section 224.2 requires it to "find" unknown relatives and others who have an interest in the children. Rather, it must "diligently discharge" its duty "to locate and interview family members who might have pertinent information" and are reasonably available. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 966.) Where a parent fails to provide names and contact information for extended family members, the department's ability to conduct an exhaustive ICWA inquiry is necessarily constrained. (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.) "[S]ection 224.2 'does not require the agency to "find"

---

[8] We note the record indicates the maternal aunt (CJ) represented none of the family members she called were able to provide information about MGGF's date of birth or date of death. However, there is no information as to the names of the family members the maternal aunt called, or whether she provided those names to the social worker.

unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.  The operative concept is those people who are *reasonably available* to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'"  (*Dezi C*., *supra*, 16 Cal.5th at p. 1140, italics added.)

## III.  CONCLUSION

We conditionally reverse the order terminating mother's parental rights.  We remand the matter to the juvenile court with directions to comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3—and, if applicable, the notice provisions as well.  If, after completing the initial inquiry, neither CFS nor the court has reason to know that the children are Indian children, then the court shall reinstate the order terminating parental rights.  If CFS has reason to know the children are Indian children, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                            Acting P. J.

We concur:


MILLER
                          J.


FIELDS
                          J.

16