Filed 6/5/26  In re M.A.-S. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.A.-S., a Person Coming Under the Juvenile Court Law. | H053714 (Santa Cruz County Super. Ct. No. 24JU00016) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. S.S., Defendant and Appellant. | |

Mother S.S. (Mother) appeals the juvenile court's order terminating her parental rights as to her child, M.A.-S.  The sole issue on appeal is whether the juvenile court erred in finding the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) inapplicable.  Mother contends respondent Santa Cruz County Human Services Department (the Department) failed to comply with ICWA's inquiry requirements.  We conclude the inquiry in this case was deficient and therefore conditionally reverse the order terminating Mother's parental rights and remand the matter for the juvenile court and the Department to comply with ICWA's inquiry requirements.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

M.A.-S. (born 2022) is the youngest of mother's five children. Since 2011, Mother has been the subject of several referrals and dependency proceedings due to her ongoing substance abuse. Mother's parental rights have been terminated for two of her children, and those children were adopted by family members. These family members also help care for two other children for whom parental rights have not been terminated.

In late 2023, the Department received a referral of general neglect as to M.A.-S., mother's fifth child, alleging that Mother[2] left drug paraphernalia accessible to the child. After the Department contacted Mother about the referral, she placed M.A.-S. in his maternal great-aunt's care. Hoping to avoid initiating dependency proceedings, the Department assessed M.A.-S.'s relatives for guardianship of him. The child's maternal grandmother declined to be considered for placement due to health issues. M.A.-S.'s maternal grandfather was disqualified due to his criminal history and recent arrest. Although M.A.-S. stayed with his maternal great-aunt for some period of time, eventually, M.A.-S. returned to live with Mother.

When no viable relative placement options presented themselves, the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (b), (g), and (j),[3] alleging that Mother and Father's substance abuse put M.A.-S. at substantial risk of harm, Father's whereabouts were unknown, M.A.-S.'s siblings had been abused or neglected, and there was a substantial risk that M.A.-S. would be abused or neglected.

---

[1] " 'In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order.' [Citation.] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1046.)

[2] Law enforcement also arrested M.A.-S's father, J.A. (Father), for outstanding substance-related warrants. Because Father did not appeal the order, we omit many of the facts related to him.

[3] Undesignated statutory references are to the Welfare and Institutions Code.

**A.  *Dependency Proceedings***

At the jurisdictional hearing, the juvenile court ordered family maintenance services for Mother, and left M.A.-S. in Mother's care.  During this time, the social worker was unable to contact Mother, and Mother made no progress with the case plan.  Law enforcement also raised concerns about Mother's home.  A probation search revealed drug paraphernalia that was accessible to M.A.-S, and police cautioned the social worker to avoid going to Mother's home without a police escort because of "concerning activit[y]" there.  A few months later, the Department filed a supplemental petition pursuant to section 387, alleging Mother had failed to comply with her case plan and had failed to demonstrate an ability to safely parent M.A.-S.

The court sustained the section 387 petition, ordered M.A.-S. detained, and directed the Department to provide reunification services for Mother and Father.  The Department placed M.A.-S. with his paternal grandparents.  At the six-month review hearing, the court terminated Mother's and Father's reunification services and set the matter for a selection and implementation hearing.  Subsequently, the court terminated Mother's and Father's parental rights and selected a permanent plan of adoption for M.A.-S.

Mother timely appealed the order terminating parental rights.

**B.  *The Department's ICWA Investigation and The Juvenile Court's ICWA Findings***

In a prior dependency proceeding in 2020, Mother reported and the trial court found that ICWA did not apply to M.A.-S's siblings.[4]  When the Department undertook its inquiry in this proceeding, Mother claimed that while she was unaware of any ancestry, she might have extended relatives with Indian ancestry.  M.A.-S.'s maternal

---

[4] The record in this appeal does not include information about the specific nature of the ICWA inquiry undertaken by the Department as to the two siblings.  Nor does it include information about the ICWA inquiry undertaken by the Department, if any, in any other previous proceedings involving these parents.

great-aunt reported that she might have Indian ancestry based on her father's representations, but she was unsure of the tribe. She offered to contact relatives living in New Mexico to learn more. Neither Mother nor maternal great-aunt knew of any relatives enrolled in a tribe or living on a reservation. The Department's investigation narrative stated that there was a reason to believe M.A.-S. might be an Indian child. However, form ICWA-010(A), attached to its petition, stated that its inquiry provided no reason to believe that M.A.-S. was or might be an Indian child.

A few days after the Department filed its section 300 petition, the social worker attempted to call all of the child's maternal and paternal relatives identified in a family search. The social worker spoke with two maternal aunts, maternal great-grandmother, paternal grandmother, paternal grandfather, and paternal uncle. Each denied any Indian ancestry. The social worker also left voicemails requesting a call back "at the other numbers provided for possible family members," but did not specify who the voicemails were left for or how many additional people were contacted.

At the hearing after the Department filed its petition, Mother and the child's paternal grandparents denied being members or eligible to be members of an Indian tribe, that any family member was a member or eligible to be a member in an Indian tribe, and that any family member had ever lived on an Indian reservation or received money from an Indian tribe. Based on their responses, the court found no reason to know and no reason to believe M.A.-S. was an Indian child.

About six months later, the Department contacted another maternal aunt of M.A.-S. about the family's Indian ancestry, and she confirmed that there was none. She stated that she and Mother have different fathers and that Mother is half-Filipino.

Soon thereafter, Father made his first appearance at the contested section 387 hearing and denied Indian ancestry. Based on the lack of new information, at that hearing, the court did not change its prior finding that there was no reason to know or believe that M.A.-S. was an Indian child.

4

## II.    DISCUSSION

Mother contends that substantial evidence did not support the juvenile court's ICWA finding because the Department's inquiry into M.A.-S.'s Indian ancestry was inadequate.  The Department asserts that it contacted every reasonably available relative, and based on the well-developed record, substantial evidence supports the juvenile court's finding that M.A.-S. was not an Indian child.[5]  On the record before us, we agree with Mother.

### A. *ICWA Principles*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'  [Citations.]"  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi C.*).)  To address this concern, "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards. [Citations.]"  (*Id.* at p. 1129.)  "An 'Indian child' is defined as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  [Citation.]"  (*Ibid.*)  To increase compliance with federal regulations, California enacted—and later amended—legislation that adopted various procedural and substantive provisions of ICWA.  (*Id.* at pp. 1130-1131.)

The juvenile court and the Department "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child."  (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-

---

[5] M.A.-S.'s counsel joins the Department's brief pursuant to California Rules of Court, rule 8.200(a)(5).

5

1132, quoting § 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) "The duty to inquire begins with the initial contact with the reporting party, and it continues with the [Department]'s 'first contact with the child and each family member, including extended family members.' " (*In re Claudia R.* (2025) 115 Cal.App.5th 76, 84 (*Claudia R.*), quoting § 224.2, subd. (b)(1); see Cal. Rules of Court, rule 5.481(a)(1)[6] [the department "must ask … the parents, … extended family members, … [and] others who have an interest in the child, … whether the child is or may be an Indian child"].) An "extended family member" includes "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [adopting same definition].)

The juvenile court may conclude that ICWA does not apply if it finds that the Department's "inquiry and due diligence were 'proper and adequate,' and the resulting record provide[s] no reason to know the child is an Indian child …." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134, quoting § 224.2, subd. (i)(2).) A juvenile court's finding that ICWA does not apply in a proceeding implies the Department fulfilled its duty of inquiry and that neither the Department nor the court had a reason to know or believe the subject child is an Indian child. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

**B. *Standard of Review***

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) With respect to a juvenile court's conclusion that an inquiry was adequate and proper, "[s]ome courts apply a straightforward substantial evidence test"

---

[6] Subsequent references to rules of court are to the California Rules of Court.

while " 'other courts have used a hybrid standard, reviewing for substantial evidence whether there is a reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion.' [Citation.]" (*Ibid.*) Although the Supreme Court in *Dezi C.* did not resolve the split in authority as to what standard of review applies to these findings, it acknowledged that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005 (*Ezequiel G.*), disapproved on other grounds by *Dezi C.*, at p. 1152, fn. 18] subject to a deferential standard of review. [Citations.]" (*Dezi C.*, at p. 1141.)

" ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." ' [Citations.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141; quoting *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101-1102.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the [Department] did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the [Department] can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi C.*, at p. 1141.)

C. ***The Juvenile Court Erred by Finding the Department's Inquiry Sufficient***

Mother contends that the Department failed to adequately investigate M.A.-S.'s Indian ancestry because the social worker never questioned maternal grandparents and failed to follow-up with maternal great-aunt regarding her statement about possible Indian ancestry. Based on the Department's deficient inquiry, Mother maintains that

7

substantial evidence does not support the juvenile court's ICWA finding.[7] We conclude that the juvenile court abused its discretion in finding the Department's inquiry sufficient.

The Department has a duty to provide the juvenile court with sufficient evidence from which to make its ICWA determination. (*In re K.H.* (2022) 84 Cal.App.5th 566, 605 (*K.H.*).) There are few concrete guidelines describing what constitutes an adequate inquiry by the Department because this standard is necessarily fact driven. (*Id.* at p. 604.) The Supreme Court in *Dezi C.* stated, "[A]n adequate initial inquiry that reaches beyond parents to extended family members and others facilitates the discovery of Indian identity and maximizes the chances that potential Indian children are discovered and tribes are notified." (*Dezi C., supra,* 16 Cal.5th at p. 1140.) " 'The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Ibid.*)

It is undisputed that the Department gathered a considerable amount of information regarding Indian ancestry. The Department had information from the prior two dependency proceedings where Mother had reported, and the court had found, that ICWA did not apply. The social worker contacted and spoke with numerous relatives and attempted to contact other unidentified family members, leaving a message asking for a call back. The social worker interviewed Mother, maternal great-grandmother, maternal great-aunt, three maternal aunts, paternal grandmother, paternal grandfather, and paternal uncle. During this investigation, maternal great-aunt told the social worker about possible Indian ancestry through maternal great-grandfather and offered to get more information from her relatives in New Mexico.

However, there is no record that the Department followed up with this great-aunt to find out if she was able to get the additional information about possible Indian ancestry

_____

[7] Mother does not challenge the ICWA findings related to M.A.-S.'s paternal family.

8

through the great-grandfather. Nor is there any record of the Department interviewing maternal grandparents and asking them about Indian ancestry through maternal great-grandfather. Based on these omissions and the current state of the law, we conclude that despite the breadth of the Department's inquiry, it was not reasonably sufficient under the circumstances.

### 1. *Prior ICWA Findings are not Dispositive Here*

The Department contends that the juvenile court's prior ICWA findings as to M.A.-S.'s siblings support the court's ICWA finding in this dependency. After the changes in the law governing ICWA inquiries in 2020, a juvenile court may not always reasonably rely on a prior ICWA finding involving the same family even if previously undisputed and unchallenged. (*In re Jerry R.* (2023) 95 Cal.App.5th 388, 428.) Because the 2020 changes in the law increased the Department's duty to inquire and document its investigation, inquiries in prior dependencies are "often … lacking" under the current requirements of section 224.2, subdivision (b), and rule 5.481(a)(5). (*Ibid.*) Although the court made its prior ICWA findings for M.A.-S's siblings as to Mother's Indian ancestry the same year as the change in the law, because of the lack of documentation and the court not having the benefit of "the many appellate decisions that have … shaped this area of the law," we cannot necessarily rely on these findings. (*Ibid.*) The record here shows that the court's prior ICWA finding was based on Mother's report of no Indian ancestry. There is no record of who may have been interviewed in the prior proceedings or what they may have reported. We do not know if the information from maternal great-aunt was reported or investigated. Without specific details from the prior findings sufficient to meet the current standards, the juvenile court could not rely on the prior ICWA findings. (*In re M.E.* (2022) 79 Cal.App.5th 73, 84-85.)

An exception to this rule exists where the record is clear that there were no changed circumstances between the two dependency proceedings. In *In re Charles W.*, the juvenile court found that ICWA did not apply to the child's older siblings in a prior

9

dependency. (*In re Charles W.* (2021) 66 Cal.App.5th 483, 490.) About 11 months later in the subsequent dependency, the mother first claimed Indian ancestry but later denied any Indian ancestry. (*Id.* at p. 486.) The juvenile court, relying on the prior findings, found ICWA did not apply. (*Id.* at pp. 487-488.) The appellate court affirmed the juvenile court's reliance on the prior finding, noting the mother's representation that there was no new information since the prior dependency. (*Id.* at pp. 487-488, 490.) But here there is no record of maternal great-aunt's claim of possible Indian ancestry inclusion in the prior proceedings. As this information is new, it constitutes a change of circumstances and precludes reliance on the prior ICWA findings.

For these reasons, the prior ICWA findings could not support the juvenile court's finding that ICWA did not apply.

### 2. *Current Inquiry was Deficient*

The Department disputes Mother's contention that the inquiry was deficient because of the failure to interview maternal grandparents and to follow up with the maternal great-aunt. The Department argues that, presumably, maternal grandparents were among those contacted when the social worker attempted to call the maternal relatives for whom it had contact information.

The Department asserts that it attempted to contact and interview every family member that it knew about, which would theoretically include the maternal grandparents. The Department concedes, however, that the record could be clearer about who was called, and their potential relationship to M.A.-S. Rule 5.481, subdivision (a)(5), requires the Department to "include in its filings a *detailed* description of all inquiries, and further inquiries it has undertaken." (Italics added.) "[The Department] cannot omit from its reports any discussion of its efforts to locate and interview family members who might have pertinent information and then claim that the sufficiency of its efforts cannot be challenged on appeal because the record is silent." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 [rejecting the Department's argument that the absence of information about its

10

investigative efforts precludes the parent from meeting their burden on appeal].)  The Department's report stated that the social worker attempted to contact maternal relatives it knew about and left voicemails for "possible family members."  The record does not include a list of the "possible family members" that the Department contacted or could not reach when it conducted its ICWA inquiry.  As a result, we cannot presume maternal grandparents were among those contacted.

Even if we could presume that they were included, there is no record of what was discussed or what they might have reported regarding the family's Indian ancestry.  Nor is there any record that they were asked about maternal great-aunt's claim regarding possible Indian ancestry through maternal great-grandfather.  There is evidence in the record that the social worker spoke with both maternal grandmother and grandfather at various times in past dependencies and during the current dependency about various placement issues.  However, there is nothing in the record to show that they were asked about Indian ancestry.

Although the court in *Dezi C.* did not have the opportunity to define what constitutes an adequate inquiry, other courts have found that "reasonableness … is the touchstone.  The agency's inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*K.H.*, *supra*, 84 Cal.App.5th at p. 604.)  But courts do not necessarily agree on what is reasonable.  The court in *In re C.L.* (2025) 116 Cal.App.5th 53, 58 found that where the record is well-developed, the Department does not need to question every reasonably available relative.  (*Ibid.* [no abuse of discretion where the Department interviewed parents, maternal and paternal grandmothers, maternal great-uncle, paternal cousin and his wife, but not the maternal uncle].)  Other courts have held that the Department must interview "all reasonably available extended family members who may have knowledge of a child's Indian ancestry." (*Claudia R.*, *supra*, 115 Cal.App.5th at p. 81.)  Ultimately,

11

what is reasonable or who is reasonably available will depend on the facts and circumstances of a given case.

If, for example, the Department knows about 10 family members, but is only able to speak with five, because the rest do not respond, and all five deny Indian ancestry, a court might find the inquiry reasonably sufficient. On the other hand, if the Department contacts nine family members, but fails to contact the 10th, who they are told by other family members might have the necessary information about Indian ancestry, a court might find that inquiry insufficient. In *Claudia R.*, the Department interviewed some but not all extended family members and failed to ask for contact information for other available family members. (*Claudia R.*, *supra,* 115 Cal.App.5th at p. 81.) Acknowledging that the Department did not need to interview extended family members that it could not locate after a good faith effort, the appellate court concluded that the Department's duty of inquiry was not satisfied by "interviewing a sufficient number of family members … *regardless* of whether other reasonably available extended family members may be able to provide missing information on a child's ancestry." (*Id.* at p. 88, fn. omitted.) In finding the inquiry insufficient, the court explained that even though some family members deny Indian ancestry, it does not mean other family members would "not have meaningful information about [] Indian ancestry." (*Id.* at p. 88.) Similarly, under the circumstances of the case before us, the Department's failure to speak with, or failure to document any discussions with, the maternal grandparents was not reasonable. While most of the relatives the Department spoke with denied Indian ancestry, maternal grandparents may have been able to provide input or insight into claims made by the maternal great-aunt about Indian ancestry.

The Department failed to further pursue maternal great-aunt's offer to contact relatives in New Mexico about possible Indian ancestry. As the *Dezi C.* court explained, forced assimilation policies have led younger generations, such as Mother and M.A.-S.'s maternal aunts, to " 'lack[] knowledge of their Native American ancestry which may only

be retained by conducting [a] proper ICWA inquiry with extended family members and others more knowledgeable.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1139.) The court further emphasized that parents "may not be the best source of information about a child's Indian ancestry" because " 'generations who lived through trauma at the hands of state actors pass a lack of self-identification as Native American to younger generations, leaving only the older family members or extended family members with knowledge of' Indian ancestry. [Citation.]" (*Id.* at pp. 1139, 1146.) Thus, following up with the great-aunt about her research was critical and may have provided information not available to younger family members.

The Department had a duty to pursue all reasonable investigative leads. (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 787.) It failed to do so here. Thus, while the juvenile court had significant discretion to determine the adequacy of the Department's inquiry, we determine that on this record the Department's inquiry was inadequate under the current law related to ICWA.

### 3. *Conclusion*

As the juvenile court abused its discretion in finding that the ICWA inquiry was adequate, the finding that ICWA did not apply is not supported by substantial evidence. (See *In re J.C.* (2022) 77 Cal.App.5th 70, 74.) Accordingly, we must conditionally reverse the order terminating parental rights. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

### III.   DISPOSITION

The order terminating Mother's parental rights is conditionally reversed and the matter is remanded to the juvenile court with instructions to order the Department to comply with ICWA's inquiry requirements. If thereafter the juvenile court finds that M.A.-S. is an Indian child, the juvenile court shall conduct a new section 366.26 hearing and proceed in accordance with ICWA. If not, the juvenile court shall reinstate the original section 366.26 order.

13

_____

Greenwood, P. J.

WE CONCUR:

_____

Danner, J.

_____

Bromberg, J.

H053714 In re M.A-S; Santa Cruz County HSD v. S.S.